DECISION
Plaintiff-appellant, Robin A. Stamper, had a baby at the University of Cincinnati Hospital ("University Hospital"). Dr. William Rettig was the attending physician at the delivery. Some days later, plaintiff developed vaginal bleeding and returned to the hospital where a dilation and curettage procedure ("D C") was performed by Dr. David Aicholtz. Plaintiff subsequently developed Asherman's syndrome.
Plaintiff brought this action against University Hospital alleging that Dr. Rettig had been negligent in failing to properly examine the placenta, and that Dr. Aicholtz had been negligent in performing the D C. Following a trial, the Court of Claims entered a judgment in favor of University Hospital. Plaintiff takes this appeal designating one assignment of error:
 THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT BASED ITS JUDGMENT ON THE MISTAKEN DIAGNOSIS OF A PHYSICIAN WHERE THAT OPINION ADDRESSED THE ULTIMATE ISSUE OF FACT.
We begin our discussion by pointing out that in its decision the Court of Claims found that "Dr. Rettig was not negligent in his postpartum inspection of plaintiff's placenta," and that "plaintiff did not prove that substandard performance of the D and C was, more likely than not, the cause of plaintiff's Asherman's." The lower court found Dr. Rettig not negligent, but found that plaintiff's evidence was insufficient to prove proximate cause in her case against Dr. Aicholtz. These are very different findings.
When a party asserts that the finding is against the manifest weight of the evidence, he must demonstrate that the evidence could lead to only one conclusion and that conclusion is contrary to the judgment. When addressing the sufficiency of the evidence, the focus is on all of the evidence presented by either party. Reversible error occurs when there is insufficient evidence to sustain the judgment, or when the evidence for the judgment is so substantially outweighed by the evidence contrary, that the judgment cannot be reasonably sustained.
The standard of review for a weight of the evidence question is set out in C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus:
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, the Ohio Supreme Court set out guidelines to be used by a court of appeals in reviewing a lower court decision and emphasized the importance that should be given to the findings below:
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
After giving deference to the trier's findings, SeasonsCoal instructs us how to proceed:
 [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. Id. at 80, fn. 3. (Citation omitted.)
In order to apply the weight of the evidence standard set out above to this case, we must first consider what needs to be proved in a medical malpractice case. In order to establish medical malpractice the plaintiff must present evidence establishing (1) the standard of care recognized by the medical community in the particular kind of case, (2) that the plaintiff's doctor negligently failed to meet the requisite standard of care, and (3) a direct causal connection between the medically negligent act and the injury sustained. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
The appropriate standard of care must be proven by expert testimony. Id. at 131-132. That expert testimony must explain what a physician of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. Id. at 131. In medical malpractice cases, the general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence. Hitch v. OhioDept. of Mental Health (1996), 114 Ohio App.3d 229, 240.
Plaintiff offered evidence that several days after the delivery she was having acute vaginal bleeding. There was testimony that a common cause of this, especially after delivery of a baby, is retained products of conception. Plaintiff's complaint asserts that Dr. Rettig failed to adequately examine the placenta, and as a result failed to discover that plaintiff had retained products of conception.
There was evidence that Dr. Rettig had examined the placenta. The nurse also examined the placenta and noted there was a possible abruption that may indicate that the mother's uterus had retained products of conception. However, the pathology report did not indicate an abruption or infarction, and found no signs of any torn or missing part of the placenta. Further, Dr. March testified that if tissue were found in the discharge, retained products of conception would be a likely diagnosis, but that in the present case he thought "it is much more likely than not [that] * * * retention of placental fragments was not part of this patient's symptom complex." (Emphasis added.)
This is substantial, credible evidence which supports the decision of the trial court. To be sure, there was other contradictory evidence, such as the testimony of Ladd and Dr. Ucker, but it appears that the trial court found this evidence to be less credible. Since it is particularly within the province of the trier of fact to decide issues of credibility, and since the courts of appeal are specifically enjoined from substituting their judgment for that of the trier of fact, under the standard set out in Seasons Coal and C.E. Morris, this court must uphold the trial court's finding that Dr. Rettig was not negligent. Accordingly, we hold that the decision of the Court of Claims, finding that Dr. Rettig's treatment of plaintiff was not negligent, is not against the manifest weight of the evidence.
Nor is the trial court's finding against plaintiff on her claim that Dr. Aicholtz's negligence caused her Asherman's syndrome against the manifest weight of the evidence. Plaintiff had the burden of proving by a preponderance of the evidence that Dr. Aicholtz's treatment fell below accepted medical practice. This plaintiff failed to do so.
Asherman's syndrome is a condition where, when the endometrial layer is removed, the two sides of the uterus grow together. The testimony of Dr. Ucker was that a D C should not cause Asherman's syndrome, and that the pathology report finding smooth muscle cells along with endometrial cells indicated that Dr. Aicholtz used too much pressure in scraping the walls of the uterus during the D C. Dr. March testified that the endometrial layer is very thin after conception because of low estrogen levels so that muscle tissue is sometimes found in the D C scrapings. Dr. March agreed with Dr. Ucker that a D C must be done very carefully, but added that about twenty-five percent of D C's result in Asherman's syndrome, and that in his opinion, Dr. Aicholtz had not deviated from the standard of care in his performance of the D C on plaintiff.
This evidence, although not the only evidence on the issue of standard of care, is substantial, credible evidence. If believed by the trial court, as it apparently was, it is sufficient to establish a basis for the trial court's decision that plaintiff had failed to prove that Dr. Aicholtz was negligent.
Plaintiff's single assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BROWN and BRYANT, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.